Craig K. Perry
Nevada Bar No. 3786
CRAIG K. PERRY & ASSOCIATES
2300 W. Sahara Ave., #800
Las Vegas, Nevada 89102
Telephone: (702) 228-4777
Facsimile: (702) 943-7520
cperry@craigperry.com

Chris R. Miltenberger, Esquire
The Law Office of Chris R. Miltenberger, PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com
*Subject to Pro Hac Vice*

Eric H. Weitz, Esquire
Max S. Morgan, Esquire
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com
*Subject to Pro Hac Vice*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| WAYAN GARVEY, *on behalf of himself and all others similarly situated*, | Case No.: |
| *Plaintiff*, | **COMPLAINT - CLASS ACTION** |
| v. | **JURY DEMAND** |
| KELLER WILLIAMS REALTY, INC. and BRITNEY GAITAN, | |
| *Defendants*. | |

## <u>INTRODUCTION</u>

1.      This action arises out of the relentless marketing practices of Defendant, Keller Williams

Realty, Inc. d/b/a Keller Williams ("Keller Williams") and its agents, including Defendant Britney Gaitan ("Gaitan") (together, "Defendants") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.      Keller Williams directs its realtors, such as Gaitan, to make unsolicited telemarketing calls that solicit their services.

3.      The calls utilize prerecorded messages.

4.      Keller Williams also directs its realtors to send unsolicited telemarketing text messages.

5.      These calls and text messages are made to individuals on the National Do-Not-Call Registry.

6.      The TCPA prohibits making unsolicited telemarketing calls that use prerecorded or artificial voice.

7.      The TCPA also prohibits making telemarketing calls and sending telemarketing text messages to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

8.      Accordingly, Mr. Garvey brings this action on behalf of himself and classes of similarly situated individuals.

### JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

10.     This Court has jurisdiction over Defendants because Defendants conduct business transactions in this District and Defendants made calls into this District as part of the business it conducts in this District.

11.     Venue is proper in this District because some of the wrongful conduct giving rise to this

case occurred in and/or was directed to this District.

## PARTIES

12.     Plaintiff Wayan Garvey ("Mr. Garvey") is, and at all times mentioned herein was, a citizen and resident of Las Vegas, Nevada.

13.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.     Keller Williams is, and at all times mentioned herein was, a Texas corporation headquartered at 1221 South Mopac Expressway Suite 400, Austin, Texas 78746.

15.     Keller Williams is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16.     Gaitan is, and at all times mentioned herein was, a citizen and resident of Nevada and a Keller Williams real estate agent with an office at 9420 W Sahara Ave, Las Vegas, NV 89117.

17.     Gaitan is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

18.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

19.     Relevant here, the TCPA prohibits making any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice.  47 U.S.C. § 227(b)(1).

20.     A violation of 47 U.S.C. § 227(b)(1) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3)(B).

21.     The TCPA also establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

22.     These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

23.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

24.     A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

25.     Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

26.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its

behalf under a number of theories including vicarious liability.  Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

### KELLER WILLIAMS' ILLEGAL MARKETING PRACTICES

27.     Keller Williams is the world's largest real estate franchise, having more than 1,100 offices and 191,000 agents.[1]

28.     Keller Williams' founder, Gary Keller, describes Keller Williams as "a training and coaching company that also happens to be in the business of real estate."[2]

29.     Keller Williams views its relationship with its agents as being "interdependent":



30.     Keller Williams provides its agents, such as Gaitan, directly and via third party providers it endorses, with training and coaching programs as well as technological tools to further their mutual financial interests.

31.     As outlined in Mr. Keller's *The Millionaire Real Estate Agent*, Keller Williams describes

---

[1]  *See* https://headquarters.kw.com/press/keller-williams-dominates-realtrends-500/ (last accessed June 5, 2023).
[2]  *See* https://kwworldwide.com/proven-models-systems/ (last accessed June 5, 2023).
[3]  *Id.*

lead generation as one of the "three Ls" (i.e., leads, listings, and leverage) of a successful real estate business.[4]

32.     In fact, Mr. Keller has been quoted as saying "no leads means no sales."[5]

33.     Keller Williams recognizes that "many agents struggle with maintaining a successful lead generation strategy or start veering away from it." [6]

34.     As a result, Keller Williams emphasizes that "lead generation must continue to be [the agent's] most important focus, no matter how successful [the agent] become[s]."[7]

35.     Agents are instructed to "commit a generous time block to lead generation" and to guard against other activities intruding into that time.[8]

36.     In fact, Keller Williams instructs its agents that "[n]othing short of an actual emergency should pull [the agents] away from lead generation" and that "no matter how good business is, [the agent must] never take [their] foot off the gas."[9]

37.     Mr. Keller has described the importance of lead generation to the agent's survival as follows:

> The number of qualified leads you have will either grow your business, keep you in business, or put you out of business.  Nothing else about your business will have as big an impact on it as the number of leads you have.
>
> While time really isn't money, it is convertible to money. Ultimately, lead generation is the most dollar-productive activity you can do for your real estate business[10]

38.     Keller Williams requires that its agents engage in a variety of lead generation techniques,

---

[4] *See* https://outfront.kw.com/training/the-lead-generation-model-your-ultimate-guide-to-business-growth/ (last accessed June 5, 2023).
[5] https://outfront.kw.com/training/the-lead-generation-model-your-ultimate-guide-to-business-growth/
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

including but not limited to direct mail, email, text message, and phone calls.[11]

39.     Keller Williams also requires that its agents continue to "feed" their database and describes the agent's database as a "living thing" that should never be put on a diet.[12]

40.     To help their agents generate leads, Keller Williams partners with lead provider companies, such as Landvoice Data LLC ("Landvoice"), a company that generates personal phone numbers associated with, *inter alia*, expired listings on the multiple listing service ("MLS") and personal telephone numbers for individuals that live in a close proximity to an active or recently active listing.

41.     Landvoice integrates with dialing and texting software, such as Keller Williams' Command software, and allows Keller Williams' agents to easily export calling lists and place calls and texts.[13]

42.     Many of these telephone number are registered on the National Do-Not-Call Registry.

43.     Keller Williams also provides its agents with a web-hosted platform that enables its relators to make marketing calls and send marketing text messages *en masse* to those numbers without the recipients' consent.[14]

44.     Just recently, Keller Williams hosted a webinar training for its agents directed toward lead generation with their approved lead provider company, Landvoice:

---

[11] *Id.*
[12] *Id.*
[13] *See* https://technology.kw.com/explore-command/ (last accessed June 5, 2023).
[14] *Id.*



45.     This webinar training focused on "5 Easy & predictable listing sources."

46.     First, Keller Williams, via Landvoice, instructs its agents to target and cold call "daily expired" listings.



47.     Agents are instructed to search expired leads and to be the first agent to contact them.

---

15 https://www.youtube.com/watch?v=Oix7N8oDo7w (last accessed June 5, 2023).

48.     Keller Williams itself and via Landvoice provides its agents with scripts for calling:



49.     Keller Williams also provides its agents, via Landvoice, with a database of telephone numbers to call and the expired listings:



50.     Keller Williams recognizes that many other companies use this same technique, and that the recipient is likely to receive 30-50 calls on *every* phone number that can be found, yet they call anyway and encourage this aggressive tactic.

51.     Keller Williams, via Landvoice, even encourages its agents to tell prospective clients to record a voicemail to block other competitors from contacting them:



52.     Keller Williams, via Landvoice, *even* attempts to use the National Do Not Call Registry in a perverted manner by instructing its prospects that its agents call (that are not on the DNC) to register all of their numbers on the National Do Not Call Registry for the sole purpose of "blocking" their competition.



53.     Keller Williams, via Landvoice, also instructs its agents to target and cold-call "old expireds":



54.     These are listings that "gave up on the market" and "may not know the current home value."

55.     Keller Williams, via Landvoice, advises that there is little competition with these listings since they have expired for an extended time period.

56.     Keller Williams, itself and via Landvoice, provides its agents with scripts for calling "old expired":



57.     Keller Williams, via Landvoice, also provides its agents with a database of "old expireds" and telephone numbers to call.

58.     Keller Williams, via Landvoice also instructs its agents to cold-call for-sale-by-owner listings:



59.     Keller Williams, itself and via Landvoice, provides its agents with specific sales tactics and pitches for dealing with potential for-sale-by-owner listings they intend to convert to clients:



60.     Keller Williams, via Landvoice, also provides its agents with a database of "for-sale-by-owner" leads and telephone numbers to call.

61.     Keller Williams, via Landvoice, also instructs its agents to cold-call pre-foreclosures:



62.     Keller Williams provides its agents, itself and via Landvoice, with specific techniques and scripts for dealing with pre-foreclosure individuals.



63.     Keller Williams provides its agents, via Landvoice, with a database of "pre-foreclosure" leads and telephone numbers to call.

64.     Keller Williams, via Landvoice, also instructs its agents to engage in "geo farming":



65.     Keller Williams instructs its agents to cold-call "neighbors" of its listings within a 1.5 mile radius.

66.     Keller Williams, via Landvoice provides its agents with a database of "neighboring" leads and telephone numbers to call.

67.     Keller Williams approves of, endorses, and encourages its agents to use Landvoice and other services to generate leads.

68.     Keller Williams invites Landvoice to speak at its events and participate in its training of its relator agents.

69.     Keller Williams directs its realtor agents to purchase lead lists via third parties and to call these leads with a dialer.

70.     Keller Williams encourages its agents to engage in campaigns, including text messaging campaigns and calling campaigns.

71.     Keller Williams' coaching and training programs and partner provided education are an integral part of its business.

## PLAINTIFF'S FACTUAL ALLEGATIONS

72.     Mr. Garvey is the user of a cellular telephone number (XXX)-XXX-1128.

73.     Mr. Garvey's cellular telephone number (XXX)-XXX-1128 is used for residential purposes.

74.     Mr. Garvey's cellular telephone number (XXX)-XXX-1128 has been on the National Do-Not-Call Registry since July 26, 2006.

75.     Mr. Garvey personally placed his cellular telephone number (XXX)-XXX-1128 on the National Do-Not-Call Registry.

76.     On or about April 26, 2023, Mr. Garvey began receiving text messages and telephone calls from Defendants soliciting him to sell his home with Keller Williams.

77.     Upon information and belief, Mr. Garvey's information was associated with an "Old Expireds" lead list provided by one of Keller Williams' approved vendors.

78.     Upon information and belief Keller Williams' approved vendor skip-traced Mr. Garvey's telephone number because it was associated with his property that he previously had listed for sale in 2019.

79.     Upon information and belief, Keller Williams' approved lead vendor provided Mr. Garvey's telephone number to Gaitan.

80.     As taught and instructed by Keller Williams, with the tools provided by Keller Williams, Gaitan began making unsolicited prerecorded calls and sending unsolicited text messages to Mr. Garvey marketing Defendants' services.

81.     These calls and text messages came from 702-297-8097.

82.     For example, Mr. Garvey received calls from Defendants on at least the following dates:

- May 3, 2023 from 702-297-8097 (twice); and

- May 16, 2023 from 702-297-8097 (twice).

83.   When answered, the calls played a prerecorded message in a female voice that stated:

Hi!  This is Brittany Gaitan.  I'm free this week, any time in the afternoon, to talk about your home.  We don't need more than about ten minutes to connect.  My number is 702-858-5650. I look forward to speaking with you soon.  Let me know what days work for you.

84.   Telephone number 702-858-5650 is the direct telephone number for Defendant Gaitan.

85.   Mr. Garvey knew this was a prerecorded message because he could not interact with the caller when he answered the phone.

86.   Mr. Garvey received text messages from Keller Williams on at least the following dates:

- April 26, 2023:



Wednesday, Apr 26 • 9:20 AM

The Spring🌷 market is here. Mortgage rates are favorable. Buyers are looking for a property today! GET AHEAD of the market! Beat the flood of inventory when your neighbors decide to sell in the next few months. 🏡
If you could get the RIGHT price TODAY...would you sell now?
Britney Gaitan S. 40498 | Gaitan Group
Keller Williams Las Vegas

- May 2, 2023:



Tuesday, May 2 • 9:19 AM

Good afternoon 🌟
I'm a local Realtor with 25 years of experience. I see you recently had a home for sale. 🏡 I have identified your home as highly sellable. If I could get you an agreeable price, would you sell now? All we need is 10 minutes to discuss the market and a plan to get you top dollar. When can we meet? 💰

- May 15, 2023:

Monday, May 15 • 9:48 AM

Hello. We still have buyers
looking for homes just like yours.
💥 Checking in to see when you
have time to discuss getting your
home SOLD. ⏳ When are you
available? Please let me know so
we can get started.

Britney Gaitan S. 40498 | Gaitan
Group
Keller Williams Las Vegas|

- May 22, 2023:

Monday, May 22 • 10:14 AM

Hello, Are you still in the market
to sell your home? I hope you're
having a great day! 😊

Britney Gaitan S. 40498 | Gaitan
Group
Keller Williams Las Vegas|

87.     Defendants' internal records will evidence the dates and times of all of the calls and text messages placed to Mr. Garvey.

88.     Mr. Garvey did not provide prior express invitation or permission or consent for these telephone calls or text messages.

89.     To the contrary, in response to the unwanted calls and text messages, Mr. Garvey requested that they stop.

90.     Defendants' violations were negligent.

91.     Alternatively, Defendants' violations were willful and knowing.

92.     Mr. Garvey and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendants' calls and text messages temporarily seized and trespassed upon the

use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls and text messages. Defendants' telephone calls and text messages were annoying and a nuisance, and wasted the time of Mr. Garvey and the class members. *See, e.g., Mims,* 565 U.S. at 372.

### DEFENDANTS' LIABILITY

93. Defendants use automated systems to make outbound prerecorded sales calls to hundred if not thousands of consumers across the U.S.

94. Defendants made multiple telephone calls that utilized a prerecorded voice to Mr. Garvey and the Prerecord Class members without their prior express consent.

95. These calls were not for an emergency purpose.

96. This constitutes a violation of 47 U.S.C. § 227(b)(1).

97. Accordingly, for violations of 47 U.S.C. § 227(b)(1), Mr. Garvey and the Prerecord Class members are entitled to $500 per call pursuant to 47 U.S.C. § 227(b)(3)(B).

98. Mr. Garvey and the Prerecord Class members are entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

99. Defendants used automated systems to send telemarketing text messages and to make outbound sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

100. Defendants made two or more telephone solicitations to Mr. Garvey, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

101. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Mr. Garvey and the DNC Class members are entitled to $500 per call through 47 U.S.C. § 227(c).

102.     Mr. Garvey and the DNC Class members are entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

103.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," as defined as follows:

### THE CLASSES

Plaintiff and all persons within the United States to whose telephone number Defendants placed (or a relator acting on behalf of Keller Williams placed) a call using a prerecorded voice from four (4) years prior to the filing of the Complaint to the date of class certification.

("Prerecord Class")

Plaintiff and all persons within the United States to whose telephone number Defendants placed (or a relator acting on behalf of Keller Williams placed) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint to the date of class certification.

("Registry Class")

(The Prerecord Class and the Registry Class are together referred to herein as the "Classes.")

104.     Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

105.     The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

106.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

a.  The time period(s) during which Defendants or its realtors made the telephone calls and sent text messages;

b.  The telephone numbers to which Defendants or its realtors made telephone calls or sent text messages;

c.  The telephone numbers for which Defendants had prior express written consent;

d.  The purposes of such telephone calls and text messages; and

e.  The names and addresses of Class members.

107.  The Classes are comprised of hundreds, if not thousands, of individuals.

108.  There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

a.  Whether Defendants (or its realtors acting on behalf of Keller Willaims) make telemarketing calls;

b.  Whether Defendants (or its relators acting on behalf of Keller Williams) use prerecorded voice in their telemarketing calls;

c.  Whether Defendants (or its realtors acting on behalf of Keller Willaims) obtain prior express written consent;

d.  Whether Defendants (or relators acting on behalf of Keller Williams) make solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

e.  Whether Defendants' statutory violations were willful and knowing; and

f.  Whether Defendants should be enjoined from engaging in such conduct in the future.

109.  Plaintiff is a member of the Classes in that Defendants placed two or more calls/text for telemarketing purposes, in a one-year period to his telephone number, without his prior express written

consent, and while his telephone number was on the National Do-Not-Call Registry. In addition, certain of these calls utilized an artificial or prerecorded voice.

110.    Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Keller Williams' uniform conduct and are based on the same legal theories as these claims.

111.    Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Keller Williams' unwanted calls and text messages and suffered a nuisance and an invasion of their privacy.

112.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

113.    Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

114.    Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

115.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

116.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

117.    Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Prerecord Class)**

118.    Mr. Garvey and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

119.    Defendants violated 47 U.S.C. § 227(b)(1) by using an artificial or prerecorded voice in connection with the calls it (or a realtor acting on its behalf) placed to Plaintiff's telephone number and the telephone numbers of the putative Prerecord Class members, without consent.

120.    As a result, Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiff and the Members of the putative Prerecord Class are entitled to damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

121.    Mr. Garvey and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

122.    Defendants s made, or had made on their behalf, telephone solicitations to Mr. Garvey's and putative Registry Class Members' telephone numbers.

123.    Mr. Garvey and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

124.    Mr. Garvey and putative Registry Class Members each received two or more such calls in a 12-month period.

125.    Mr. Garvey and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

126.    Mr. Garvey and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Mr. Garvey as the representative of the Classes and appointing his counsel as Class Counsel;

B.      An order declaring that Defendants' actions, as set out above, violate the statutes referenced herein;

C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.      An award of statutory damages;

E.      An award of treble damages; and

F.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

92.     Pursuant to the Seventh Amendment to the Constitution of the United States of America, and in accordance with Fed R. Civ. P. 38, and LR 38-1, Plaintiff demands a trial by jury.

Dated: June 12, 2023

  _/s/ Craig K. Perry_____
Craig K. Perry
Nevada Bar No. 3786
CRAIG K. PERRY & ASSOCIATES
2300 W. Sahara Ave., #800
Las Vegas, Nevada 89102
Telephone: (702) 228-4777
Facsimile: (702) 943-7520
cperry@craigperry.com

Chris R. Miltenberger, Esquire
The Law Office of Chris R. Miltenberger, PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Eric H. Weitz, Esquire
Max S. Morgan, Esquire
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100

Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com