**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WAYAN GARVEY, *on behalf of himself and others similarly situated*,<br><br>Plaintiff<br><br>v.<br><br>BRITNEY GAITAN,<br><br>Defendant | Case No.: 2:23-cv-00920-APG-DJA<br><br>**Order Granting Plaintiff's Motion for Class Certification and Appointment of Class Counsel**<br><br>[ECF No. 87] |

The Telephone Consumer Protection Act (TCPA) makes it unlawful for any person "to make any call" using "an artificial or prerecorded voice" to a cell phone without the party's consent. 47 U.S.C. § 227(b)(1)(A)(iii).  Wayne Garvey alleges Britney Gaitan, a realtor, violated the TCPA by calling him multiple times without his consent on two days in May 2023 with prerecorded messages.  Garvey seeks to certify a class of all persons Gaitan called with prerecorded messages on those two days under Federal Rule of Civil Procedure (FRCP) 23.  He also seeks to appoint The Weitz Firm, LLC, The Law Office of Chris R. Miltenberger, PLLC, and Craig K. Perry & Associates as class counsel.  Gaitan opposes class certification.  I grant Garvey's motion to certify the class and appoint class counsel because he has met his burden under FRCP 23(a) and (b)(3).

**I.      BACKGROUND**

Garvey listed his house for sale online on the Multiple Listing Service (MLS) website and posted his phone number with the listing, but his listing expired. ECF No. 87-1 at 12, 21, 24. Afterward, on May 3, 2023 and again on May 16, 2023, he received phone calls from Gaitan that played a prerecorded message. ECF No. 87-3 at 3.

Gaitan is a realtor who called homeowners with withdrawn and expired house listings to offer her services. ECF Nos. 87-1 at 21, 26; 90-2 at 2.  She used an online third-party service to accumulate homeowner contact information from withdrawn or expired online listings, including from the MLS, into a single dataset. ECF No. 90-2 at 2.  This was how she acquired Garvey's phone number. ECF No. 87-1 at 21.  Gaitan exported this dataset into a different program called Go HighLevel, where she could make calls and send texts. *Id.* at 22, 23.  She uploaded into Go HighLevel a voice message offering her assistance as a realtor that she prerecorded on her cell phone. *Id.* at 28.  Gaitan used Go HighLevel to send this prerecorded message as a ringless voicemail drop to the phone numbers in the dataset, including to Garvey's. *Id.* at 22, 36; ECF No. 90-2 at 2-3, 5.  A ringless voicemail drop delivers a voicemail directly to a recipient's voicemail box without the phone ringing. ECF No. 90-2 at 5.  It is not possible for the recipient to answer the ringless voicemail drop, but he will receive a notification as if he missed the call. *Id.*

Gaitan has no documentation that she received Garvey's or any of the putative class members' consent to contact them with a prerecorded message. ECF No. 87-1 at 28, 39.  Prior to sending the prerecorded message to Garvey, Gaitan had received two text messages from unnamed consumers in March and April 2023 in response to her messages sent through Go HighLevel telling her that the messages violated the TCPA. *Id.* at 6.

Garvey filed suit under the TCPA against Gaitan on behalf of himself and others she called with a prerecorded message. ECF No. 25 at 20.  He now seeks to the certify the following class, claiming a violation of § 227(b)(1)(A)(iii) of the TCPA:

> All persons throughout the United States or its territories (1) to whom Defendant placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service when the number was called and was not ported, or if ported, had

not been ported within fifteen (15) days of the call,[1] (3) in connection with which Defendant used an artificial or prerecorded voice, (4) on May 3, 2023 and/or May 16, 2023.

ECF No. 87 at 2.[2]  His proposed class includes 983 unique cell phone numbers, constituting the class members, that were cumulatively called 1,983 times on the two days. ECF No. 87-2 at 14. Garvey seeks $500 in damages per call or, if Gaitan's violations are found to be willful or knowing, $1,500 per call. ECF No. 25 at 17.

## II.    LEGAL STANDARD

The TCPA makes it unlawful for any person to "make any call . . . using . . . an artificial or prerecorded voice" to a "cellular telephone" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii).  Recipients of calls that violate the TCPA can sue "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3)(B).  But if "the defendant willfully or knowingly" violates the TCPA, "the court may . . . increase the amount of the award" up to three times the amount available under § 227(b)(3)(B). *Id.* § 227(b)(3).

To obtain certification of a class to pursue money damages, Garvey must satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, as well as Rule 23(b)(3)'s requirements of predominance and superiority.[3]  He bears the burden of

---

[1] Porting is someone moving his phone number from one carrier to another. ECF No. 87-2 at 11; *Porting: Keeping Your Phone Number When You Change Providers*, Federal Communications Commission, https://www.fcc.gov/consumers/guides/porting-keeping-your-phone-number-when-you-change-providers.

[2] Garvey alleged two classes in his complaint but seeks to certify only one class now. ECF Nos. 25 at 20; 87 at 2.  Therefore, I will only consider whether he has met his burden to certify the one class in his motion for class certification.

[3] Gaitan argues that the class is not "ascertainable" for several reasons. ECF No. 90 at 5 (citing *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554 (C.D. Cal. 2012)).  The Ninth Circuit has not "adopted an 'ascertainability' requirement" to certify a class. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017).  Instead, the Ninth Circuit "address[es] the types

proving Rule 23's prerequisites "by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, the "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis omitted). I must perform "a rigorous analysis" to ensure Rule 23's requirements have been satisfied. *Id.* at 350-51. Thus, the "determination whether expert evidence is capable of resolving a class-wide question in one stroke may include weighing . . . expert testimony . . . to ensure that Rule 23(b)(3)'s requirements are met and the common, aggregation-enabling issue predominates over individual issues." *Olean*, 31 F.4th at 666 (simplified). The Rule 23 analysis may "overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. However, I should consider merits questions only to the extent that they are relevant to determining whether the plaintiffs have satisfied Rule 23's requirements. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). The inquiry is not whether the class will prevail on the merits of their claims but whether common questions capable of class-wide resolution exist and whether they predominate over individualized ones. *Id.* at 1196.

---

of issues of alleged definitional deficiencies other courts have referred to as 'ascertainability' issues . . . through analysis of Rule 23's enumerated requirements." *Id.* Accordingly, I do the same here with Gaitan's "ascertainability" objections and consider them objections under Rule 23(b)(3)'s predominance requirement because they invoke individualized issues that predominate over common class questions. *See Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 291 (D. Utah 2021) (finding that issues whether the prerecorded voice actually played and whether class members consented to messages "are more appropriately aimed at the predominance element"); *Jackson v. Athena Bitcoin, Inc.*, No. 4:24cv331-MW/MJF, 2025 WL 2237453, at *4, 6, 8 (N.D. Fla. June 18, 2025) (analyzing whether class members have residential phone numbers or consented to messages under the predominance element despite the defendant raising the arguments with respect to commonality).

## III.   DISCUSSION

### A. Garvey has met the numerosity requirement.

A class must be "so numerous that joinder of all members is impracticable." FRCP 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Garvey seeks to certify a class with 983 members based on the 983 unique cell phone numbers that his expert identified were called on May 3 or 16, 2023. ECF Nos. 87 at 5; 87-1 at 14. Gaitan does not contest numerosity. Therefore, Garvey has satisfied Rule 23's numerosity requirement.

### B. Garvey has met the commonality requirement.

Commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (quotation omitted). The class's claims "must depend upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "[E]ven a single common question will do." *Id.* at 359 (simplified). In contrast, an individual question is one where members of the class must present evidence that varies from member to member. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). The question is whether the plaintiffs' claim is capable of being resolved, either successfully or unsuccessfully, through common proof. *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1026 (9th Cir. 2024) (stating that "when the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—an alleged failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification" (simplified)).

Garvey has identified three common questions: (1) whether Gaitan used a prerecorded voice in connection with her calls to class members; (2) whether each class member suffered roughly the same injury; and (3) whether each class member consented to Gaitan's calls. ECF No. 87 at 6-7. Other courts have found these common questions to satisfy commonality under Rule 23. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018) (finding consent to be a common question in a TCPA case); *Head v. Citibank, N.A.*, 340 F.R.D. 145, 151 (D. Ariz. 2022) (finding whether the defendant used a prerecorded voice and whether each class member suffered the same injury to be common questions). Therefore, Garvey has satisfied Rule 23's commonality element.[4]

**C. Garvey has met the typicality requirement.**

"The test of typicality is whether other members have the same or similar injury [as the plaintiff], whether the action is based on conduct which is not unique to [plaintiff], and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). This does not require Garvey and the class members to be "substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quotation omitted). It is enough if Garvey's claims are "reasonably coextensive with those of absent class members." *Id.* (quotation omitted). Typicality also requires that I ensure Garvey is not "subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508 (simplified).

---

[4] Garvey raises several objections to commonality, arguing that some of the TCPA's requirements would require "individualized determination[s]" for each class member. ECF No. 90 at 13. I will consider Gaitan's objections when analyzing predominance. *See Wesley*, 339 F.R.D. at 291 (finding that the defendant's objections to commonality "are more appropriately aimed at the predominance element").

Here, Garvey has provided evidence that he received a prerecorded phone call from Gaitan on the same days as the putative class members. ECF Nos. 87-1 at 21; 87-2 at 14; 87-3 at 3. Gaitan can raise a consent defense against Garvey as she can against all class members. No party has identified a unique defense that only Garvey is subject to. Therefore, Garvey has satisfied Rule 23's typicality element.

**D. Garvey has met the adequacy requirement.**

Adequacy is satisfied when the class representative will "fairly and adequately protect the interests of the class." FRCP 23(a)(4). Adequacy looks to "uncover conflicts of interest between named parties and the class they seek to represent." *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (quotation omitted). Resolving the question of adequacy "requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Kim*, 87 F.4th at 1000 (9th Cir. 2023) (quotation omitted).

Garvey submitted a signed declaration that he has no known conflicts of interests with the class, understands the responsibilities of a class representative, and is prepared to seek a result that is fair to the class as a whole. ECF No. 87-3 at 4. Garvey's counsel submitted signed declarations stating that they have no known conflicts of interests with the class, have litigated many TCPA actions before, and have and will continue to pay for the costs necessary to prosecute this class action, including hiring an expert witness, performing written discovery, and

taking depositions. ECF Nos. 87-4 at 4, 10-12; 87-5 at 4-5, 10-11; 87-1 at 3, 5. Gaitan does not dispute adequacy. Therefore, Garvey has satisfied Rule 23's adequacy element.

**E. Garvey has met the predominance requirement.**

After satisfying Rule 23(a)'s requirements, Garvey must meet Rule 23(b)(3)'s predominance requirement and show that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Predominance is related to commonality because it "presupposes satisfaction of the commonality requirement of [Rule] 23(a)(2), which itself tests the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Lytle*, 114 F.4th at 1023 (quotation omitted). "But the predominance inquiry goes further and asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (quotation omitted). "Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc) (quotation omitted). Consequently, "even if just one common question predominates, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Id.* (quotation omitted).

I "have a duty to take a close look at whether common questions predominate over individual ones to ensure that individual questions do not overwhelm questions common to the class." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019) (quotation omitted). With respect to the predominance inquiry specifically, I must evaluate "the method or methods by which plaintiffs propose to use the [class-wide] evidence to prove the common

question in one stroke." *Olean*, 31 F.4th at 666 (quotation omitted).  For the plaintiffs to meet their burden to prove that a common question predominates, they must show that the common question relates to a central issue in their claim. *Id.* at 665.

> 1.  *The question of whether Gaitan used a prerecorded voice, such that the class members suffered an injury under the TCPA, satisfies the predominance requirement.*

Garvey argues that the question of whether Gaitan used a prerecorded voice predominates in this matter and that the act of leaving a prerecorded voicemail itself violates the TCPA. Gaitan contends that Garvey must not only prove Gaitan used a prerecorded voice but also that each putative class member listened to the prerecorded voicemail.  She asserts that determining such would require "individual assessments of each recipient." ECF No. 90 at 11.

Gaitan cites no law that states a recipient must listen to the voicemail to suffer an injury under the TCPA.  That requirement is not in the statutory text, which makes it "unlawful   . . . to make any call . . .  using . . . an artificial or prerecorded voice" to a "cellular telephone" without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii).  Guidance from the Federal Communications Commission (FCC) further supports that the TCPA does not require recipients to listen to the voicemail.  The FCC has stated that a "call made" under the TCPA "need not be completed, and need not result in a conversation or voicemail." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9074, 9086 (2016).  If the call does not need to result in a voicemail to trigger TCPA liability, the recipient need not listen to any voicemail left.  Further, in a declaratory ruling and order, the FCC ruled that ringless voicemails are "calls" under the TCPA. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Petition for Declaratory Ruling of All About the Message, LLC*, 37 F.C.C. Rcd. 13675 (2022).  Thus, to comply with the TCPA, a ringless

voicemail "requires consumer consent." *Id.* at 13684.  Whether the recipient listened to the ringless voicemail did not factor into its analysis. *See id.*  In fact, it found that "a key consumer problem with ringless voicemail" is how "unwanted messages, messages the consumer has no control over, crowd potentially wanted messages out of the consumer's voicemail capacity." *Id.* at 13679-80.  This issue is unrelated to whether the recipient listens to the voicemail.

The Ninth Circuit has not ruled whether a recipient must listen to a voicemail to trigger TCPA liability.  Gaitan relies on a Fifth Circuit decision, *Ybarra v. Dish Network, LLC*, for the proposition that the recipient must listen to the prerecorded message to trigger a TCPA violation. 807 F.3d 635 (5th Cir. 2015).  But *Ybarra* did not hold that.  In *Ybarra*, the Fifth Circuit addressed a situation in which a prerecorded voice played only when a call was picked up and there was a "positive voice" response, which could be either a human voice or a recorded voicemail greeting. *Id.* at 637.  The record indicated that when the defendant's call was not met by a positive voice, no prerecorded message played. *Id.* at 637; *Ybarra v. DISH Network, LLC*, No. 4:13-cv-00963-O, (N.D. Tex. Sept. 29, 2014), ECF No. 49, at 5.  The Fifth Circuit ruled that, for a defendant to "mak[e] a call using a prerecorded voice" and be liable under § 227(b)(1)(A)(iii), "an artificial or prerecorded voice must actually play." *Id.* at 640 (quotation omitted).  This means that "the prerecorded voice must 'speak' during the call" and "that making a call in which a prerecorded voice might, but not does not, play is not a violation of the TCPA." *Ybarra*, 807 F.3d at 641.  The *Ybarra* defendant conceded liability for calls that were greeted by a positive voice because that triggered the prerecorded message. *Id.* at 640.  But the Fifth Circuit granted summary judgment to the defendant on the calls where its prerecorded message did not play: those that reached the recipient's answering machine but were not met by a positive voice

response. *Id.* at 637, 641.[5]  The Fifth Circuit did not consider whether the recipient must listen to the prerecorded voice to determine TCPA liability. *See id.* at 641.

Courts interpreting *Ybarra* have held that "it is sufficient under the TCPA for [the plaintiff] to demonstrate that a message containing a pre-recorded voice was successfully delivered to his voice mailbox." *Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cnty.*, No. 3:20-CV-01922 (JBA), 2022 WL 4367596, at *5 (D. Conn. Sept. 21, 2022); *see Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 298 (D. Utah 2021) (applying *Ybarra* and finding that the call disposition codes can answer the common question of whether a prerecorded voice "actually played" by indicating whether it was left on an answering machine).  The violation comes from using a pre-recorded voice, not from the recipient hearing it. *Lenorowitz*, 2022 WL 4367596, at *5.  None of the other cases Gaitan cited holds that a plaintiff must listen to the prerecorded voicemail to be injured under the TCPA.  Rather, they all address whether individualized issues predominated in different factual scenarios.[6]

The question whether Gaitan made a call using a prerecorded voice to the class members' phones is a common question that predominates over individual issues.  Gaitan provided Garvey

---

[5] The *Ybarra* defendants presented evidence to the district court that "[o]nly" the calls where they conceded TCPA liability "were met with a positive voice." *Ybarra*, No. 4:13-cv-00963-O, (N.D. Tex. Sept. 29, 2014), ECF No. 49, at 5.  They contested TCPA liability on the calls that were met by an "Answering Machine," and the Fifth Circuit granted them summary judgment on these calls. *Ybarra*, 807 F.3d at 637, 641.  Thus, the calls met by an "Answering Machine" were not met by a positive voice such as a "recorded voicemail greeting." *Id.* at 637.

[6] *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 322 (5th Cir. 2008) (appeal of a class certification alleging the defendant violated the TCPA by sending advertisements via a fax machine); *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *1 (N.D. Ill. Jan. 25, 2011) (denying a motion to certify a class action alleging the defendant violated the TCPA by sending advertisements via fax machine); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (finding plaintiff did not meet Rule 23's predominance requirement because the TCPA claims would require individual fact inquiries into whether each class member consented to the defendant's calls).

11

the data from the prerecorded calls she sent as ringless voicemail drops using Go HighLevel. ECF No. 93-4 at 2. Garvey's expert filtered this data and isolated calls Gaitan made only to valid phone numbers that had a disposition code of "completed"; had a call duration greater or equal to three seconds; had not been ported, or if ported, not within 15 days of the date of the call; and were made on either May 3 or 16, 2023. ECF No. 87-2 at 10. In total, the expert found that Gaitan made 1,983 calls to 983 phone numbers through Go HighLevel on these two days. *Id.* at 14. Because this data shows which ringless voicemail drops went through to recipients' phones, such that the calls were "completed," Garvey has met his burden to provide class-wide evidence that can determine whether Gaitan used a prerecorded voice for each class member.[7] *See Wesley*, 339 F.R.D. at 298 (concluding that the plaintiff satisfied predominance for a TCPA claim where the call disposition codes in the defendant's dataset can determine whether the defendant used a prerecorded voice in its calls to the class members). This is a central, common question of the class's TCPA claims that predominates over any individualized issues.

>     *2. Questions whether individual class members have standing do not predominate over common questions.*

Gaitan argues that Garvey has not shown predominance because he failed to prove that each putative class member has Article III standing to pursue a TCPA claim. Specifically, she argues that there is no evidence that each class member has suffered a particularized harm because there is no evidence they listened to the prerecorded message.

---

[7] Gaitan challenges the accuracy of the data used by Garvey's expert. She claims that the data shows that she called her own personal cell phone number 62 times, which she says is not accurate. The evidence Gaitan provided states that her phone number ends in 8650. ECF Nos. 90-2 at 5; 90-3 at 8. No phone number ending in 8650 is in the dataset. *See* ECF No. 87-2 at 174-94.

Only the named plaintiff needs to demonstrate individual standing to certify a class. *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2014). But "following class certification, both named and unnamed class members in a money damages suit must present evidence of standing," such as at the summary judgment stage. *Healy v. Milliman, Inc.*, 164 F.4th 701, 703 (9th Cir. 2026). Thus, individual class member standing is an issue I decide later, and it may require individualized determinations that could predominate over common questions. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) (holding that it is proper for district courts to determine if individualized issues of class member standing predominate over common questions under Rule 23(b)(3) for a TCPA claim).

The "receipt of unsolicited telemarketing phone calls is a concrete injury in fact sufficient to confer Article III standing." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1117 (9th Cir. 2022) (simplified). "A plaintiff alleging a violation under the TCPA need not allege any additional harm beyond the one Congress has identified to establish Article III standing." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1222 (9th Cir. 2022) (simplified). As I stated above, Gaitan has not cited any law that the putative class members need to listen to the prerecorded message to be injured under the TCPA. Therefore, they have Article III standing if Gaitan used a prerecorded voice in her ringless voicemail drops when calling their cell phones, and they need not prove any other harm. Garvey has identified a class-wide means, the Go HighLevel call dataset, to answer the common question of whether Gaitan used a prerecorded voice. Without ruling on whether the unnamed class members ultimately have standing, Garvey has met his burden that questions on Article III standing are not individualized and can be resolved by common evidence.

////

////

    *3.   Gaitan has not produced evidence that individualized issues of consent will predominate over common questions.*

Garvey argues that whether the putative class members consented to Gaitan's call is a common question that satisfies the predominance requirement, while Gaitan argues determining such is an individualized issue that precludes class certification. For a TCPA claim, "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). Express consent "relates to the same subject matter as is covered by the challenged calls" and must be "clearly and unmistakably stated." *Id.* at 1044-45; *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (quotation omitted). Though Garvey retains the burden of meeting Rule 23's predominance requirement, for consent I "assess predominance by analyzing the consent defenses [the defendant] has actually advanced and for which [she] has presented evidence." *True Health Chiropractic, Inc.*, 896 F.3d at 931-32; *see Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (whether individual issues of consent predominate over common questions turns on if there is "class-wide proof available to decide consent"). I "do not consider the consent defenses that [the defendant] might advance or for which [she] has presented no evidence." *True Health Chiropractic, Inc.*, 896 F.3d at 932.

Gaitan has not presented evidence that any putative class members consented directly to her calling them with a prerecorded voice. To the contrary, during discovery, Gaitan indicated she has no documentation showing that she obtained consent from any putative class members. ECF No. 87-1 at 39.

Gaitan asserts in her declaration that the putative class members consented to being contacted about their properties by listing their houses on the MLS along with their phone

numbers. ECF No. 90-2 at 3.  But she did not provide any further evidence for this claim, such as an agreement users must sign to list properties on the MLS.  She stated that, in the Las Vegas Realtors listing agreement, homeowners agree to the marketing and advertising of their home to the public. *Id.*  But she does not provide this agreement nor prove how it is relevant to the MLS.  Nevertheless, even if the listing on the MLS may constitute consent, it appears that this may be answerable by class-wide evidence, which presumably would be an agreement users sign to list their property on the MLS.  *See True Health Chiropractic, Inc.*, 896 F.3d at 932 (finding that the question of consent predominates where there is "little or no variation" in the agreements the class members enter with the defendant).  Gaitan has not provided evidence that determining whether some MLS users consented to being contacted about their property is an individualized issue.  Therefore, the issue of consent does not defeat class certification.

       *4.   The issue whether Gaitan called residential or business phone lines does not defeat class certification.*

      Gaitan argues that determining whether each class member's phone number is a residential line will "necessarily lead to individualized min[i]-trials" and thus class certification is not appropriate.  Gaitan cites to 47 U.S.C. § 227(b)(1)(B) for the claim that Garvey must prove the call went to a "residential telephone line" to make out a TCPA violation.  But Garvey does not allege Gaitan violated § 227(b)(1)(B).  He moves to certify a class alleging she violated § 227(b)(1)(A)(iii). ECF No. 87 at 2.

      A person violates § 227(b)(1)(A)(ii) by calling a "cellular telephone" using a prerecorded voice.  That cell phone number need not be a residential line.  Unlike § 227(b)(1)(B), the word "residential" does not appear in § 227(b)(1)(A)(iii).  Gaitan cites no case finding that a plaintiff must prove a cell phone was also a residential phone to establish a violation of

§ 227(b)(1)(A)(iii). The Ninth Circuit has acknowledged this difference between the TCPA subsections, stating that "§ 227(b)(1)(A)(iii) and § 227(b)(1)(B) impose comparable prohibitions on using 'an artificial or prerecorded voice' to make calls, respectively, to a 'cellular telephone' number and to a 'residential telephone line.'" *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123 (9th Cir. 2026) (simplified). The issue of whether the putative class members' phone lines are residential is irrelevant to their claim, so the question does not defeat class certification.

### F. Garvey has met the superiority requirement.

In addition to requiring that common questions predominate over individual questions, Rule 23(b)(3) requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) provides a non-exhaustive list of factors to consider when determining superiority, including "the class members' interests in individually controlling the prosecution . . . of separate actions," any other pending litigation, whether concentrating the claims in a particular forum would be advantageous, and "the likely difficulties in managing a class action." I should consider these factors, along with "other, non-listed factors" in conducting a "broad inquiry" into determining whether a class action is preferable to other possibilities. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010).

The superiority requirement is generally satisfied where there are "multiple claims for relatively small individual sums." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir. 2001). In *Local Joint Executive Board*, the Ninth Circuit held that superiority was satisfied when each class member would recover about $1,330, an amount that many class members would not pursue "as individuals because of the disparity between their litigation costs and what they hope to recover." *Id.*

16

Here, Garvey seeks $500 per violation of the TCPA or $1,500 per violation if it was willful or knowing. ECF No. 25 at 17.  This relatively small amount of damages decreases individual class members' interest in pursuing the claim separate from a class action.  In fact, other courts have ruled a class action is superior for pursuing TCPA claims because, "[i]n the absence of a class action, thousands of meritorious claims would likely go unredressed because the cost of litigation would dwarf any possible reward under the TCPA." *Head*, 340 F.R.D. at 154; *see Bennett v. GoDaddy.com LLC*, No. CV-16-03908-PHX-ROS, 2019 U.S. Dist. LEXIS 59766, *33 (D. Ariz. Mar. 15, 2019).  This makes a class action more advantageous for pursuing the TCPA claims in this case.

Additionally, neither side cites to pending litigation related to Gaitan's calls or to any serious difficulties in managing this case as a class action.  In fact, "if each plaintiff did bring their individual TCPA claim, it would impede judicial efficiency by requiring the courts to reinvent the wheel, in largely identical actions brought by many, many similarly situated plaintiffs." *Head*, 340 F.R.D. at 154 (simplified).

Gaitan argues this class action fails the superiority requirement because her liability would be "completely out of proportion to any harm suffered by the plaintiff." ECF No. 90 at 17.  With 1,983 alleged violations of the TCPA and a statutory minimum of $500 in damages for each violation, she could be liable for $991,500 in total.  If all alleged violations are found to be willful or knowing, her total liability would potentially increase to $2,974,500.

The Ninth Circuit has found that a statutory damages award that would "shock the conscience" may fail the superiority requirement when "such liability would be inconsistent with congressional intent in enacting the statutory damages provision." *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974); *Bateman*, 623 F.3d at 715.  Gaitan's potential

17

damages in this class action are not inconsistent with congressional intent for the TCPA damages provision.  I "must presume that Congress intended class relief to be available" for TCPA claims because the statute does not directly express that it is not. *Bateman*, 623 F.3d at 717.  Further, the TCPA "does not place a cap on these damages in the case of class actions, does not indicate any threshold at which courts are free to award less than the minimum statutory damages, and does not limit the number of individuals that can be certified in a class or the number of individual actions that can be brought against a single" defendant. *Id.* at 718.  The TCPA contains no language that Congress provided "judicial discretion" to award less than the minimum statutory award of $500 where I "find[] that damages are disproportionate to harm." *Id.* at 719.  "To deny class certification based on the potential amount of damages as compared to the extent of harm presumes that Congress left it to the courts to evaluate the relative amount of liability necessary to serve the statute's compensatory and deterrent purposes." *Id.*  Therefore, as *Bateman* proscribes, I will not consider the proportionality of the potential liability under the TCPA to the actual harm alleged in my Rule 23(b)(3) superiority analysis. *Id.* at 721.[8]  Therefore, Garvey has satisfied the superiority requirement to certify a class action.

In sum, Garvey has satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a) and (b)(3), so he has met his burden to certify the class action and appoint class counsel.  If Gaitan develops proof of any individualized issues that require burdensome, individualized inquiries, I can later take "remedial measures up

---

[8] If class certification is denied and each class member files an individual lawsuit against Gaitan, the cumulative damages potentially recoverable in those suits are the same as if the claims were brought in the class action.  So, the class action damages are directly proportional to the individual damages.

to and including decertification." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1308 (D. Nev. 2014).

**IV.      CONCLUSION**

I THEREFORE ORDER that plaintiff Wayan Garvey's motion for class certification and appointment of class counsel **(ECF No. 87) is GRANTED**.  Pursuant to FRCP 23(a) and (b)(3), I certify the class as: all persons throughout the United States or its territories (1) to whom Defendant placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service when the number was called and was not ported, or if ported, had not been ported within 15 days of the call, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) on May 3, 2023 and/or May 16, 2023.

I FURTHER ORDER that the law firms of The Weitz Firm, LLC, The Law Office of Chris R. Miltenberger, PLLC, and Craig K. Perry & Associates are appointed as class counsel.

DATED this 13th day of March, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE